MERRITT *v.* MERRITT.

1. REFORMATION OF INSTRUMENTS—DEEDS — MISTAKE —CANCELLA-
TION—LIFE ESTATE.

Where an aged woman deeded to her nephew a farm of 54 acres of land, both parties intending to reserve to her, support and maintenance during her life, and for that purpose executing a cotemporaneous writing which failed to provide for the grantor in case of the death of the grantee, before her decease, the finding of the lower court that no fraud or undue influence appeared, and correcting the deed so as to carry out the intent of both parties, was justified.

2. SAME.

But instead of ordering that complainant should have a lease for life on the farm, the court should have decreed a lien upon the premises to secure the performance of defendant's contract, and provided for the recording of the decree.

Appeal from Calhoun; North, J. Submitted January 23, 1912. (Docket No. 150.) Decided March 12, 1912.

Bill by Mary Jane Merritt against Frank L. Merritt

and Nora J. Merritt for the cancellation of a deed. From a decree of reformation so as to carry out the mutual intention of the parties, complainant appeals. Modified and affirmed.

*Stewart & Jacobs*, for complainant.

*Weeks & Cooper*, for defendants.

BLAIR, J. The bill of complaint in this case is filed to cancel and annul a deed executed by complainant to the defendant Frank L. Merritt, on the ground that such deed was obtained by fraud and undue influence.

The defendant was a nephew of complainant's deceased husband, and had lived in the family substantially as a son nearly all of his life. After his uncle's death, he took charge of and conducted the farm, which contained 54.96 acres of land. The deed in question was executed June 24, 1907, at which time complainant was about 74 years of age. Cotemporaneous with the execution of the deed, the parties executed an agreement, which, after reciting the deed, provided as follows:

"Now, therefore, it is mutually agreed by and between the aforesaid parties in consideration of the premises that said party of the first part shall continue to reside on said premises as long as she shall live and further that said party of the second part shall care for, support and maintain said party of the first part on said premises in health and sickness so long as she shall live, well and faithful, and furnish her with all the necessities of life, medical attention and care at all times and in case of her death to pay all funeral charges and expenses."

On September 2, 1908, the defendants executed a mortgage upon the farm for $1,000, without complainant's knowledge, and the defendant Frank listed the farm for sale with real estate men.

After hearing the proofs in open court, including the testimony of the parties, the circuit judge found that complainant was mentally competent to make the deed, and the same was not the result of fraud or undue influence.

He further found that the written agreement did not contain the whole agreement, and that complainant was entitled to one-third of the income or proceeds derived from the farm. A decree was entered in accordance with these findings and for the performance of the agreement as amended, and also enjoining the defendants from transferring or incumbering the title to said lands during complainant's lifetime. From this decree, complainant appeals to this court.

We agree with the finding of the circuit judge that complainant was mentally competent to execute the deed, and that the same was not obtained from her by fraud or undue influence. We are also satisfied that the cotemporaneous agreement actually executed did not carry out the true intent of the parties thereto.

Complainant testified:

" The agreement was that if I deeded him the farm he was to give me a life lease of it. I was to draw one-third of the income. * * * I depended upon Frank to give me a life lease. I found out I did not have one after I came back from York State. * * * At the time I signed that, I thought it was a life lease. * * * We went to Judge Porter together. I told him we came down to make a little change; that I wanted a life lease of the place; then I would give it over to Frank. I didn't know whether that meant deeding it or not. I already owned the place. I did not know how I expected to give it over to Frank. I was not supposed to know. I told Judge Porter that."

Defendant Frank testified:

"Mother first suggested the making of this deed. I was in the corncrib putting up some corn, and she came to the door and says: 'I think the best thing I can do is to deed this farm to you, and I will not have to bother with it, and you pay the taxes, pay the insurance, and give me one-third and keep me.' I says, 'All right,' and let it drop at that. * * * After the deed was made, I told Mr. Porter, I says: 'Now, she has nothing to show for her keep in any way, shape, or manner. Would it not be best for you to draw up a writing in some way that

will hold me for the farm, so she will have her support as long as she lives?' A paper to that effect was drawn.
*   *   *

"*Q.* Did you suppose it was the same as a life lease?

"*A.* I supposed that was the nature of it. That is what I took it for. *   *   *

"*Q.* Why did you want that contract drawn up?

"*A.* Well, I thought like this: That I might be taken away, and might be some trouble in my mother's getting her support out of that place.

"*Q.* Why didn't you have him put a life lease in the deed?

"*A.* Simply because I didn't understand it well enough to have it done. *   *   *

"*Q.* Did you intend to have the instrument drawn so that it would not provide for her support in case of your death?

"*A.* No.

"*Q.* Did you intend to have it drawn so it would?

"*A.* Yes, sir."

Judge Porter testified:

"It was all read over to her. It was fully comprehended and understood by both of them. I read over the other one too. I would have to read it to her. This other agreement was made—now, my recollection is they objected to putting that life estate, or what was equivalent to a life estate, in this deed, and in lieu of that I drew that memorandum of agreement between them."

We are satisfied that it was the mutual intention of the parties that the cotemporaneous agreement should afford to complainant protection of her right to a home and support equivalent to that which would have been furnished by a life lease of the farm, and that by mutual mistake the agreement failed to accomplish their intention.

The bill sets up that complainant—

"Entered into a certain agreement with the said Frank L. Merritt, which arrangement was as follows: That she should deed said farm to the said Frank L. Merritt in consideration that he, the said Frank L. Merritt, should execute to your oratrix a life lease of the same, and in addition to said life lease being so made and executed the said Frank L. Merritt was to remain upon said farm and

support, care for, and maintain, your oratrix, paying all the expenses of the farm and caring for the same, and should each year deliver to your oratrix one-third of the proceeds and income from the said farm, which said one-third your oratrix was to have over and above her living and maintenance by the said Frank L. Merritt."

One of the prayers for relief is:

"That the said defendants be required by a decree of the court to make and execute a life lease of all of said property to the complainant herein, free and clear of and from all incumbrance, and that in case of the failure of the said defendants so to do that they be required by a decree of this honorable court to reconvey all of said property, both real and personal, to your oratrix, and in case of their failure to make and execute such conveyance that a decree of the court be recorded to retransfer said property from the said defendants to the said complainant."

In view of this special prayer for relief and the general prayer, we think it would be competent for the court to reform the cotemporaneous agreement, so as to carry out the intention of the parties by making the performance thereof a lien upon the land conveyed. The decree may be modified in accordance with this opinion and providing for the recording thereof as evidence of complainant's interest in the land.

The decree, as modified by this opinion, is affirmed, with costs to complainant.

MOORE, C. J., and STEERE, MCALVAY, BROOKE, STONE, and OSTRANDER, JJ., concurred. BIRD, J., did not sit.